## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

|  |  |
|---|---|
| JENNIFER NARDELLO. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 1:15-CV-03729-JKB |
| v. | ) |
|  | ) |
| BOEHRINGER INGELHEIM USA CORP., | ) |
| *et al.*, | ) |
| Defendants. | ) |
|  | ) |

---

## OPPOSITION TO AETNA'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Plaintiff Jennifer Nardello, ("Plaintiff" or "Ms. Nardello"), through counsel, hereby opposes Defendant Aetna Life Insurance Company ("Aetna" or "Defendant")'s Motion to Dismiss or in the Alternative for Summary Judgment ("Motion"). Docket No. 17. Defendant moves to dismiss all of Plaintiff's claims against it or in the alternative to be granted summary judgment on the grounds that the Employee Retirement Income Security Act of 1973, ("ERISA") does not apply in this matter, and also because Defendant is not a proper party to suit based upon Plaintiff's claims. Since ERISA applies to the present matter and because Defendant is a necessary party to this action due to its role as claims administrator, wielding discretionary control in interpreting the definition of disabled set forth in the plan, Defendant is a proper party for suit. Therefore Defendant's Motion should be denied.[1]

---

[1] Defendant AETNA has argued that the STD plan in question is not an ERISA plan. Plaintiff notes that in the alternative she has filed a breach of contract claim against both Defendants, and that if this Court concludes that the plan in question is not an ERISA Plan, the breach of contract claim asserted against AETNA should simply proceed in arbitration.

I.      **Statement Of Facts**

Ms. Nardello has been employed by Defendant as a Primary Care Sales Representative 2 since 2012.  Compl. ¶ 24.  As part of the benefits offered to its employees, Defendant maintains a Short-Term Disability, ("STD"), program through which employees may claim benefits in the form of income replacement during periods wherein they are incapable of performing the duties of their job due to medical problems. Def. Ex. C.  Beginning in March of 2015 Ms. Nardello began missing work days due to medical problems.  Compl. ¶ 26.  By April of 2015 Ms. Nardello exhausted the paid leave that she was using to cover absences associated with her medical condition and was informed by Defendant's management that she was required to apply for Short-Term Disability benefits, to continue taking leave.  Compl. ¶ 34.  Pursuant to this instruction, on April 6, 2015 Plaintiff submitted her application for STD benefits to Defendant via telephone.  Compl. ¶ 35.

Throughout the process of pursuing STD benefits, Ms. Nardello provided medical and other documentation designed to establish her eligibility for benefits under the plan to Defendant. Compl. ¶¶ 37-38, 42, 52.  Defendant also solicited medical information requests to Plaintiff's physicians as part of its investigation into the Ms. Nardello's eligibility for STD benefits and sought Ms. Nardello's assistance with receiving those documents when it experienced difficulty accessing them.  Ex. 1.  On April 21, 2015 Plaintiff's STD claim was denied by Defendant as Defendant made the determination that insufficient evidence existed to support that Plaintiff was eligible for benefits under the plan. Compl. ¶¶39-40;  Ex. 2

Plaintiff subsequently appealed the denial of her STD claim on April 24, 2015.  Compl. ¶ 38.  As with her initial claim, Plaintiff submitted her appeal to Defendant who assigned one of its own appeals specialists to conduct a review Plaintiff's documentation and make a determination

on her appeal.  Ex. 3.  Defendant subsequently denied Plaintiff's appeal in a June 5, 2015 letter

in which Defendant explained at length the reasoning in which it engaged in making the decision

to deny Plaintiff's appeal as well as the evidence upon which it relied in making its decision.  Ex.

4; Compl. ¶50.  Ms. Nardello was ultimately awarded STD benefits to cover the time period

from June 19, 2015 through July 2, 2015.  Compl. ¶ 52.  On July 30, 2015 Defendant denied

Plaintiff benefits retroactive to July 3, 2015 based upon its determination that insufficient

evidence existed to support her eligibility for benefits.  Compl. ¶ 57; Ex. 5.

     After being repeatedly denied benefits to which she was entitled by Defendant, on

December 12, 2015 Plaintiff filed the present action citing Defendant's violations of ERISA[2].

## II.   Standard of Review

### A.  Motion to Dismiss under Rule 12(b)(6)

     When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all of the

allegations in the complaint as true and must construe all facts and inferences in favor of the

plaintiff.  *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).  A

complaint must contain sufficient factual allegations to state a claim for relief that is plausible on

its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The allegations do not need

to be factually detailed; they merely need to show "enough to raise a right of relief above the

speculative level." *Twombly*, 55 U.S. at 555.  Plaintiff meets this standard of review as she has

alleged facts, which if true, are sufficient to establish that Defendant interfered with and denied

her benefits in violation of ERISA.  Therefore, Plaintiff has presented plausible claims for relief

and this Court should deny Defendant's Motion.

---

[2] Plaintiff's Complaint also included two other Counts that are not relevant to the present Opposition and which the Plaintiff has already voluntarily dismissed. Docket No. 15.

### B.  Summary Judgment Standard

The moving party bears the burden of showing "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Facts are "material" if they ultimately support the substantive law upon which the claim rests.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 248 (1986). A dispute of fact is "genuine" so long

as a reasonable fact-finder could find for the non-moving party. *Id* "In considering a motion for

summary judgment, the district court must 'view the evidence in the light most favorable to the'

nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir.

2015) (quoting *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014)) (internal quotations omitted).

Furthermore, the Courts view of the likelihood that Plaintiff will succeed on the merits is

immaterial at the summary judgment phase. *Id*. at 568-569 (quoting 10A Charles Alan Wright &

Arthur R. Miller et al., *Federal Practice & Procedure* § 2728 (3d ed.1998)).  If a reasonable jury

could return a verdict for the non-moving party, then there is a genuine dispute preventing

summary judgment.  *Id*. at 568 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th

Cir. 2013)).

### III.  <u>Argument</u>

### A.  Defendant's STD Plan is Governed by ERISA

Defendant does not deny that the Agreement entered into between Defendant and

Plaintiff explicitly excludes from its scope claims made under ERISA. This is clear on the face

of the Agreement itself.  Def. Ex. A, pg. 3; Def. Ex. B1, pg. 3.  The crux of Defendant's

argument therefore is that ERISA does not apply to Plaintiff's case at all. In making this

contention, Defendant alleges that the STD plan that it maintains is not a "welfare benefit plan"

that falls within the coverage of ERISA by merely asserting that it is a "payroll practice" as

described by the regulation promulgated by the Department of Labor, ("DOL")  at 29 CFR

§2510.31(b).  Defendant is incorrect in this assertion.

The STD plan maintained by Defendant is of the sort that ERISA's definition of

"employee welfare benefit plan" was designed to include.  ERISA defines an "employee welfare

benefit plan" as:

> "any plan, fund, or program which has heretofore or is hereafter established or
> maintained by an employer or by an employee organization, or by both, to the extent that
> such plan, fund or program was established or is maintained for the purpose of providing
> for its participants or their beneficiaries, through the purchase of insurance or otherwise."

29 U.S.C. § 1132(a)

In 1975, when promulgating 29 CFR §2510.31(b), DOL made clear that the regulation in no way

reflected its entire thinking on the subject.[3] The Department of Labor has enacted regulations

which exclude from the "employee welfare benefit plan" definition of ERISA discrete categories

of arrangements. Included amongst those arrangements excluded from being considered "welfare

benefit plans" are "payroll practices" which are defined by the Department of Labor as ". . .

[p]ayment of the employee's normal compensation, out of the employer's general assets, on

account of periods of time during which the employee is physically or mentally unable to

perform his or her duties; or is otherwise absent for medical reasons (such as pregnancy, a

physical examination or psychiatric treatment)."  29 C.F.R. §2510.3-1(b)(2).  It is this exemption

which Defendant would see the Court apply here.

---

[3] Some of the practices listed in this section as excluded from the definition of "welfare plan" or mentioned as
examples of general categories of excluded practices are inserted in response to questions received by the
Department of Labor and, in the Department's judgment, do not represent borderline cases under the definition
in section 3(1) of the Act. Therefore, this section should not be read as implicitly indicating the Department's
views on the possible scope of section 3(1).  29 CFR §2510.31(b)(4)

First, the DOL exemption must be harmonized with the Supreme Court's later statutory interpretation, which clearly reflects the administrative developments in the provision of benefits since 1975.  Further, Defendant overlooks however that the STD plan at issue utilizes an extensive claims procedure overseen by a third-party administrator and therefore has an administrative scheme. The presence of such an administrative scheme is not contemplated by the Department of Labor regulation upon which Defendant seeks to rely and brings its STD plan within the coverage of ERISA.

The Supreme Court has made clear that the touchstone of determining whether the provision of benefits to employees fits within this definition is whether the benefits provided are the sort which requires the employer to erect an administrative scheme. *See Fort Halifax Packing Co. v. Coyne*, 282 U.S. 1 (1987).  None of the published authority cited by Defendant in support of its attempt to invoke the "payroll practices exemption" addresses circumstances under which there was an administrative scheme overseen by a third-party administrator associated with the provision of benefits, nor does any of the published authority upon which the Defendant relies address the Supreme Court's interpretation of ERISA's statutory language in *Fort Halifax* concluding that the creation of an administrative scheme to provide benefits to employees creates an "employee welfare benefit plan" governed by ERISA.  Even the Department of Labor Advisory Opinions upon which Defendant rely, by virtue of its invocation of *Bassiri v. Xerox Corp.,* 463 F.3d 927 (9th Cir. 2006), do not involve circumstances wherein the employers informed DOL of the existence of an administrator handling claims, interpreting plan language and applying it to the facts presented,  and deciding appeals (A/K/A, an administrative scheme) when describing the "payroll practices" for which they sought DOL approval as exempt from

ERISA.[4]  Therefore, since under ERISA Procedure 76-1 §§ 10-11 Advisory Opinions only apply

to the circumstances described within them, the Advisory Opinions of the Department of Labor

implicated by Defendant do not provide authority for the proposition that the arrangement

created by Defendant fits within the definition of "payroll practice."

In fact, the only authority upon which Defendant relies which at all makes reference to

the question of *Fort Halifax*'s effect on whether a plan is a "payroll practice" under 29 C.F.R.

§2510.3-1(b)(2), is the unpublished opinion of the Sixth Circuit in *Capriccioso v. Henry Ford*

*Health Systems*, 2000 WL 1033030, (6th Cir. 2000).   As this opinion is from outside of the

Circuit in which this Court sits and is also unpublished, it is only relevant to the extent that its

reasoning has the power to persuade and its reasoning is fundamentally flawed.

In *Capriccioso*, the Sixth Circuit dismissed the Plaintiff's invocation of *Fort Halifax*'s

pronouncements regarding the presence of an administrative scheme creating a plan that is

governed by ERISA simply because the plan at issue in *Fort Halifax* provided severance benefits

and the payroll practice exemption does not apply to severance benefit plans. *Capriccioso*, 2000

WL 1033030 at 3.  This anemic analysis represents a fundamental misunderstanding of the scope

of the definition of welfare benefit plan, which is basically anything that is not a retirement plan.

Further, the Sixth Circuit failed to fully analyze the Supreme Court's holding in *Fort Halifax*.

The Supreme Court, in *Fort Halifax*, did not state that the provision of severance benefits when

accompanied by an administrative scheme creates an "employee welfare benefit plan" under

---

[4] *See generally* Dep't of Labor, Opinion 94-40A, 1994 ERISA LEXIS 65 (Dec. 7, 1994); Dep't of Labor, Opinion
93-27A, 1993 ERISA LEXIS 29 (Oct. 12, 1993); Dep't of Labor, Opinion 93-20A, 1993 ERISA LEXIS 20  (July
16, 1993); Dep't of Labor, Opinion 93-02A, 1993 ERISA LEXIS 2  (Jan. 12, 1993)); Dep't of Labor, Opinion 92-
18A, 1992 ERISA LEXIS 19 (Sept. 30, 1992); Dep't of Labor, Opinion 83-37A, 1983 ERISA LEXIS 23 (July 18,
1983); Dep't of Labor, Opinion 82-44A, 1982 ERISA LEXIS 24  (Aug. 27, 1982); Dep't of Labor, Opinion 81-71A,
1981 ERISA LEXIS 18  (Sept. 11, 1981); Dep't of Labor, Opinion 80-53A, 1980 ERISA LEXIS 24 (Sept. 5, 1980);
Dep't of Labor, Opinion 80-44A, 1980 ERISA LEXIS 33  (July 22, 1980); Dep't of Labor, Opinion 79-69A, 1979
ERISA LEXIS 23  (Sept. 25, 1979).

ERISA.  Instead the Supreme Court made clear that the concerns that Congress sought to address with ERISA arise "with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Fort Halifax*, 482 U.S. at 11.  The Court's statement applies not merely to the severance benefits at issue at the time but to all benefits that an employer might provide which, like the severance benefits then at issue, require the employer to create an administrative scheme in order to effectively provide the benefit to its employees.  On the face of Defendant's own description of the administrative scheme it operates, the STD benefits provided by Defendant in the instant matter are exactly the kind of benefit to which the Supreme Court was referring.

In the present matter, Defendant itself acknowledges the existence of an administrative scheme in that an employee must access benefits under the STD plan employees by first submitting an application for benefits to Defendant as the claims administrator.  Further, the Defendant admits that it has been engaged to serve as the STD/LTD claims administrator to process benefit claims and make decisions regarding granting or denying benefits on employee's claims; and that the administrative process through which employee claims are evaluated involves the collection and review of employee medical records and other documentation, as well as a multi-level decision-making process which includes appellate procedures. *See* Def. Ex. A.  On the face of these uncontested facts about how the STD plan operates, it cannot be credibly argued that the STD plan provides benefits as a "one-time, lump-sum payment . . ." which amounts to " . . . little more than writ[ing] a check" and therefore " . . . hardly constitutes the operation of a benefit plan" under the Supreme Court's analysis.  *Fort Halifax*, 482 U.S. at 12.  Instead, BI through its STD plan offers its employees "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation," *Id.* at 11, which

8

are exactly the sort of arrangements that the Supreme Court has acknowledged that Congress intended to reach in passing ERISA. *Id.* at 9.

Nothing in the definition of "payroll practice" in 29 C.F.R. §2510.3-1(b)(2) suggests that an employer may pay benefits to its employees through an administrative scheme and, in defiance of *Fort Halifax*, avoid the coverage of ERISA by being deemed a "payroll practice." Defendant has provided no direct authority for the proposition that the "payroll practice" exemption includes benefits provided through administrative schemes beyond the *Capriccioso* decision whose fundamental misunderstanding of the scope of the Supreme Court's decision in *Fort Halifax* is described above. Accordingly, the Court should decline to follow the Sixth Circuits unpublished opinion in *Capriccioso* and Defendant's Motion should be denied due to the fact that Defendant's STD plan is covered by ERISA[5].

## B. Defendant Is A Proper Party To Suit

Defendant argues that it is not a proper party to suit because it is not a fiduciary of the STD plan maintained by BI. A fiduciary as defined by ERISA is a person who, by authority or control, exercises discretion in managing or administering a plan or in disposing of its assets or who renders investment advice for compensation in connection with the assets of the plan. 29 U.S.C. § 1002(21)(A); *See NARDA, Inc. v. Rhode Island Hosp. Trust Nat. Bank*, 744 F. Supp. 685, 693 (D. Md. 1990). The regulations promulgated by the Department of Labor have made clear that only those third party administrators that serve merely "ministerial functions" are beyond the scope of the definition of fiduciary enshrined in the statute. 29 C.F.R. § 2509.75-8.

---

[5] Defendant also argues that it does not consider its plan to be an ERISA plan and does not treat it as such however even the authority upon which Defendant itself relies acknowledges that an employer's labelling of its plan is not dispositive on the question of whether the plan actually falls within the ambit of ERISA. *Stern v. International Business Machines Corp.*, 326 F. 3d 1367, 1374 (11th Cir. 2003); *See also Langley v. Daimler Chrysler Clorp.*, 502 F.3d 475, 481 (6th Cir. 2007) ( mere labeling by a plan sponsor or administrator is not determinative on whether a plan is governed by ERISA).

To support its contention that fiduciary obligations, and therefore liability to suit, do not attach to it, Defendant relies entirely on a singular authority in the form of the unpublished opinion issued by the Fourth Circuit in *Givens v. Am. Benefit Corp.*, 1993 WL 165002 (4th Cir. 1993).  Defendant's reliance upon *Givens* however is misplaced.  In *Givens* the Fourth Circuit held that the claims administrator was not acting as a fiduciary because "final decisions **and appeals** were in the hands of the Benefit Plan's Trustees." *Givens*, 1993 WL 165002 at 3.  Here, unlike the claims administrator in *Givens*, Defendant is not merely tasked with applying the rules of the plan to make initial determinations as to the eligibility of participants for benefits.  By its own admission, Defendant is also empowered to hear appeals of its own initial determinations if a denied beneficiary seeks further review of their claim.  Def. Ex. 2.  Therefore, the circumstances in the present case are readily distinguishable from those present in *Givens*.

As such, since Defendant serves as a third-party administrator that accepts claims, investigates their sufficiency by collecting medical and other supporting documentation, reviews documentation to make an initial claims decision, and also conducts appellate review of its own initial clams decision, Defendant should be held  a fiduciary by virtue of "exercise[ing] discretion in managing or administering a plan." 29 U.S.C. § 1002(21)(A); *See NARDA, Inc. v. Rhode Island Hosp. Trust Nat. Bank*, 744 F. Supp. 685, 693 (D. Md. 1990); *See also American Fed'n of Unions v. Equitable Life Assur. Soc'y,* 841 F.2d 658 (5th Cir.1988) (holding that an administrator was a fiduciary because he was empowered to investigate, process, resolve and pay claims to members of an ERISA fund which qualified "as discretionary control respecting management of a plan or its assets within the meaning of § 1002(21)(A)").  Defendant has not shown that it is an improper party to Plaintiff's suit and its Motion should be denied.

Even if AETNA is not a fiduciary, it does not mean that it has shown that is not a necessary party in this matter.[6]  By its own admissions in Exhibit A, AETNA outlines how it is an agent of Boehringer Ingelheim USA Corp. ("BI").  In the affidavit of Debra Comar, she states that AETNA has an administrative services arrangement pursuant to which it performs certain obligations for the STD Program including collecting medical records, scheduling peer review of employees' medical records and rendering initial disability claims determinations and first level appeals.  Nothing in the affidavit states that as to those tasks, BI exercises control or sets forth guidelines and protocols to be followed.  Further, there is nothing to suggest that as to those initial claims decisions and first level appeals that BI exercises control.  The statement that BI retains complete authority and responsibility for the STD program is in direct contradiction with the earlier statement in the affidavit inasmuch as the previous statement is devoid of any examples of how BI maintains control over the obligations AETNA freely states are their own under the administrative services agreement.  Therefore, in order to understand who is responsible for what when an employee seeks STD benefits, both BI and AETNA are necessary to understand how the claim is administered and the obligations of each as to the claim and appeal processing.


### IV.    Conclusion

Defendant has cited to no binding or persuasive authority that the STD Program is not an ERISA plan.  Instead, the record demonstrates BI contracted with AETNA to create an administrative scheme to handle claim intake, medical document review, initial claims

---

[6] See generally FRCP 19(b).  Plaintiff asserts that AETNA is indispensable because it is possible that its acts or omissions harmed Plaintiff, and there is nothing in the record suggesting that BI has assumed liability for AETNA's actions as claims administrator or is indemnifying AETNA for its activities in that role.  "[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party."  *National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.,* 210 F.3d 246, 252 (4th Cir.2000).

determinations and first-level appeals, with the authority to interpret the terms of the plan ,

specifically the applicable terms when evaluating claims and approving or denying benefits.   In

light of the administrative scheme, as supported by the administrative services arrangement, the

plan cannot be considered a "payroll practice" exempt from the coverage of ERISA.   Therefore

the Court should hold that ERISA covers BI's STD plan.   Furthermore Defendant, in its capacity

as claims administrator for the STD plan maintained by BI, engaged in activities which

constitute exercising discretion in managing the STD plan and as a result is a fiduciary of the

STD plan subject to suit over breaches of its terms. Therefore, Defendant's Motion should be

denied.


Dated: June 13, 2016

                                    Respectfully submitted,

                                      /s/ K. Scott Rocio
                                  K. Scott Rocio, Esq. (13441)
                                  Denise M. Clark (17385)
                                  Clark Law Group, PLLC
                                  1250 Connecticut Ave. N.W., Suite 200
                                  Washington, D.C. 20036
                                  (202) 293-0015
                                  ksrocio@benefitcounsel.com
                                  dmclark@benefitcounsel.com
                                  *Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on June 13, 2016, a true and accurate copy of the foregoing

was electronically filed with the Clerk's Office served using this court's CM/ECF system, which

will then serve a notice of electronic filing (NEF) on the judge and the following:


Larry R. Seegull (22991)
Eric S. Mueller (27397)
Jackson Lewis P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
Office (410) 415-2004
Facsimile (410) 415-2001
larry.seegull@jacksonlewis.com
eric.mueller@jacksonlewis.com
*Counsel for Defendants*

                                                            _____/s/ K. Scott Rocio_____
                                                              K. Scott Rocio, Esq.