IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JENNIFER NARDELLO, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-15-3792 |
| BOEHRINGER INGELHEIM USA CORP., *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

This case arises from Plaintiff Jennifer Nardello's four-count complaint against her employer, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"),[1] and against the claims administrator of its short-term disability program, Aetna Life Insurance Company ("Aetna"), alleging wrongful denial of short- and long-term disability benefits. (Complaint, ECF No. 1.) Previously, the Court dismissed without prejudice Counts I and II, which alleged violations of the Americans with Disabilities Act, after the parties stipulated that those counts were subject to an arbitration agreement between Plaintiff and BIPI. (Order Approving Joint Stipulation of Dismissal, ECF No. 14.) Count III alleges that BIPI and Aetna wrongly denied Plaintiff benefits to which she was entitled by BIPI's short-term disability ("STD") plan, and seeks redress under the Employee Retirement Income Security Act of 1974 ("ERISA") or, alternatively, under contract law. (Complaint ¶ 89.) Count IV alleges that that BIPI and Aetna's administration of BIPI's long-term disability ("LTD") plan violates both Defendants' fiduciary duties under ERISA. (*Id.* at ¶ 93.)

---

[1] The parties agree that BIPI is Plaintiff's employer and the proper party to this suit in spite of the fact that Plaintiff initially filed her complaint against Boehringer Ingelheim USA Corp. (Joint Stipulation to Stay 1 n.1, ECF No. 8.) The Clerk will be directed to amend the docket to reflect Defendant's proper name.

Currently before the Court are Defendant Aetna's motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 17) and Defendant BIPI's motion to compel arbitration and to stay or dismiss further litigation (ECF No. 16). Both motions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons detailed below, the Court will grant Aetna's motion in part as a motion to dismiss and grant it in part as a motion for summary judgment. The Court will grant BIPI's motion to compel arbitration, and will stay the case.[2]

## I.   *Standard for Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

---

[2] Pursuant to a joint stipulation, the Court previously stayed this case pending Plaintiff's receipt of a right to sue notice from the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 9.) Plaintiff received that document. (*See* Joint Stipulation to Extend Time, ECF No. 10.) The stay was effectively mooted, but was inadvertently left in place on the docket. The Court lifts the stay *nunc pro tunc* to April 20, 2016, so as to rule on the pending motions, and will again stay the case as a consequence of its current rulings.

## II. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. *Id.*

## III. Allegations of the Complaint[3]

Plaintiff is employed by BIPI as a primary care sales representative. (Complaint ¶ 24.) Plaintiff alleges that Aetna is the plan administrator of BIPI's STD plan (*Id.* at ¶ 6.) Beginning in March of 2015, Plaintiff began experiencing symptoms of severe gastro-intestinal discomfort,

---

[3] The facts are recited here as alleged by Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

nausea, and dizziness, resulting in a significant amount of time in which she was unable to work. (*Id.* at ¶¶ 25–30, 59.) It took several months for doctors to diagnose these symptoms as stemming from endometriosis, to perform surgery and other corrective treatments, and for Plaintiff to recover sufficiently so as to resume a normal work schedule. (*Id.* at ¶¶ 27, 33, 53, 56.) In April of 2015, Plaintiff exhausted her paid leave and applied for BIPI's STD plan. (*Id.* at ¶¶ 34–35.) Aetna, the plan's claims administrator, denied this application on April 21 (*Id.* at ¶ 38), Plaintiff appealed this decision on April 24 (*Id.* at ¶ 41), and her appeal was denied on June 5 (*Id.* at ¶ 50). Plaintiff was ultimately approved for STD coverage from June 19 through July 2 (*Id.* at ¶ 52), but was denied coverage from July 3 forward (*Id.* at ¶ 57). Plaintiff also alleges that she was only paid for six of the thirteen days for which she was approved for STD coverage. (*Id.* at ¶ 54.)

## IV. Analysis

### A. *Aetna's Motion to Dismiss / Motion for Summary Judgment*

Plaintiff's claims against Aetna include separate arguments and theories justifying the payment of benefits, first, under the STD plan pursuant to ERISA and, second, pursuant to contract law (Count III), as well as for benefits under the LTD plan pursuant to ERISA (Count IV). (Complaint ¶¶ 82–93.) Aetna has moved to dismiss all of Plaintiff's claims against it or, alternatively, for summary judgment. (Aetna's Mot. to Dismiss.) Accordingly, the Court will address Aetna's motion with respect to each of Plaintiff's theories, in turn.

#### 1. *The Applicability of ERISA to the Short-Term Disability Plan*

Plaintiff's primary argument under Count III is based on the premise that the STD plan is an "employee welfare benefit plan" as defined by ERISA and that the statute imposes a fiduciary obligation on Aetna with respect to Plaintiff. (Complaint ¶¶ 82–89.) However, the STD plan

properly falls under the "payroll practice" exception to ERISA, rendering Plaintiff's arguments fruitless.

Congress passed ERISA in 1974 in order to protect employees from mismanagement of funds created by employers to support employee benefit programs. *Massachusetts v. Morash*, 490 U.S. 107, 112 (1989). ERISA defines an "employee welfare benefit plan" or "welfare plan" to include any plan, fund, or program "established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment," among other things. 29 U.S.C. § 1002(1).[4] However, the Department of Labor has published a regulation excluding what it calls "payroll practices" from consideration as employee welfare benefit programs. 29 C.F.R. § 2510.3-1(b). It defines payroll practices to include, among other things, programs involving "payment of an employee's normal compensation, *out of the employer's general assets*, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties or is otherwise absent for medical reasons." § 2510.3-1(b)(2) (emphasis added). This regulation has been consistently upheld in the courts. *See Stern v. Int'l Bus. Machines Corp.*, 326 F.3d 1367, 1372 (11th Cir. 2003) (noting "[e]very decision to interpret the payroll practices regulation since *Morash* supports the application of § 2510.3–1(b)" to program provided by employer in that case, in which employer paid employee's regular salary out of its general assets in event that employee became unable to work due to sickness or accident).

---

[4] For something to be considered a "plan" under this definition, the employer's obligation must necessitate the implementation of an ongoing administrative program. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12, 16 (1987). Even if a "plan," the distinguishing feature of most of the benefit plans subject to ERISA "is that they accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee." *Morash*, 490 U.S. at 115–16.

### a. Motion to Dismiss

According to the facts alleged in the Complaint, BIPI is the sponsor and Aetna is the administrator of the STD plan that promises benefits to BIPI employees who become disabled. (Complaint ¶¶ 6–8.) On these facts, the plan would appear to fit within the broad outlines of an employee welfare benefit plan under 29 U.S.C. § 1002(1). The Complaint further alleges that Aetna wrongfully withheld benefits from Plaintiff. (*Id.* at ¶¶ 38, 50, 55.) Plaintiff has thus presented a plausible claim for relief in her primary argument contained in Count III (the argument based on ERISA). Aetna's motion to dismiss is therefore denied as to this argument.

### b. Motion for Summary Judgment

As an alternative to its motion to dismiss, Aetna has also moved for summary judgment. (Aetna's Mot. to Dismiss.) The evidence presented by Aetna is sufficient to decide this motion—it is uncontroverted and Plaintiff has not objected based on a need for further discovery on the pertinent issues (*see* Pl.'s Opp'n to Aetna's Mot. to Dismiss, ECF No. 19).

Aetna serves as a third-party claims administrator of the STD plan (not the plan sponsor), making initial eligibility determinations, and deciding initial appeals. (Affidavit of Deborah Comar ¶ 6, ECF No. 17-2.) BIPI has ultimate control over the operation of the STD plan, making final determinations as to eligibility. (*Id.* at ¶¶ 7–8.) Importantly, BIPI funds all payments under the program out of its general assets. (*Id.* at ¶ 8.)

The STD plan meets the criteria of a payroll practice in that payments under the program are a substitute for the covered employee's wages and are paid out of BIPI's general assets. Thus, the STD plan is not a welfare benefit program and is not covered under ERISA. While the STD plan provides benefits like those covered under ERISA in that they become available in the event of a contingency that is outside of the employee's control, the STD plan does not involve

benefits that accumulate over time.  Furthermore, the STD plan does not give rise to the same concern that motivated ERISA's passage in that there is no earmarked fund that could be subject to mismanagement.

There is no factual dispute as to how the STD plan functions, and it meets the definition of a payroll practice as a matter of law.  Accordingly, the STD plan is exempt from coverage under ERISA, and the Court will grant summary judgment in favor of Aetna with respect to Plaintiff's ERISA theory in support of Count III.

### *2. Contractual Remedies Pertaining to the Short-Term Disability Plan*

Anticipating the possibility that the Court would find the STD plan not to be covered under ERISA, Plaintiff offers a claim for breach of contract as an alternative theory of recovery under Count III.[5]  (Complaint Introduction, ¶¶ 7, 89.)  This argument lacks merit with respect to Aetna.  In order to enter into a binding contract, two parties must be in privity, that is, they both must consent to an agreement between them.  *Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992).  Nowhere in her complaint has Plaintiff alleged that there was any agreement between Aetna and her.  (*See* Complaint ¶¶ 4, 6, 7, 82–89.)  Therefore, as to this alternative argument under Count III, the Court will grant Aetna's motion to dismiss.

### *3. Plaintiff's Complaint as to the Long-Term Disability Plan*

In Count IV of the Complaint, Plaintiff alleges violations of ERISA as to the administration of the LTD plan.  (Complaint ¶¶ 90–93.)  With respect to the applicability of ERISA, the LTD plan is potentially subject to different analysis from that applicable to the STD

---

[5] In arguing for breach of contract, Plaintiff cites "MD. CODE § 22-701." (Complaint ¶ 89.) Presumably, Plaintiff is referring to Md. Code, Com. Law § 22-701, which deals with breach of contract. However, that title applies only to computer information transactions, *see* Md. Code, Com. Law § 22-103, and is therefore not relevant to the instant case. The Court's analysis is instead based on a claim for breach of contract arising under Maryland common law.

plan. However, even if the LTD plan is a welfare benefit plan under ERISA, the Complaint fails to allege sufficient facts to demonstrate a plausible claim for relief as to Count IV.

Despite the fact that ERISA itself does not contain an exhaustion requirement, a claimant nevertheless must exhaust all available administrative remedies afforded her under her employer's program prior to filing suit. *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989).

BIPI's LTD plan is available to employees who are awarded STD benefits and who remain disabled after depleting those benefits. (Complaint ¶ 10.) Unlike the STD plan, the LTD plan operates as an insurance policy in which Aetna makes all eligibility determinations and makes all benefit payments. (Affidavit of Deborah Comar ¶ 9.) Count IV of the Complaint alleges that because one must be offered (and exhaust) STD benefits before receiving LTD benefits, the Defendants' denial of the majority of Plaintiff's STD claim was simultaneously a breach of the Defendants' fiduciary obligations under ERISA with respect to the LTD plan. (Complaint ¶¶ 91–93.) However, the Complaint does not allege that Plaintiff applied for LTD benefits or that she appealed any denial thereof.[6] (*See* Complaint.) In failing to plead facts sufficient to demonstrate exhaustion, Plaintiff has omitted a necessary element of a claim under ERISA.[7] Thus, regardless of whether the LTD plan is subject to ERISA, Count IV of the Complaint cannot survive a motion to dismiss. Accordingly, Aetna's motion will be granted with respect to this count. Because this resolves Aetna's role in the litigation, as to those claims on which judgment has not already been entered in its favor, Aetna is otherwise dismissed from the case.

---

[6] In fact, the record indicates that Plaintiff never filed an application for LTD benefits. (Affidavit of Deborah Comar ¶ 9.)

[7] The futility of Plaintiff's position with respect to Count IV is emphasized by her silence in response to Aetna's argument that she failed to exhaust her administrative remedies under the LTD plan. (*See* Mem. in Supp. of Aetna's Mot. to Dismiss 9 n.6, ECF No. 17-1; Opp'n to Aetna's Mot. To Dismiss.)

## B. BIPI's Motion to Compel Arbitration and to Dismiss or Stay Litigation with Respect to Counts III and IV

### 1. The Scope of the Arbitration Agreement

For its part, BIPI argues that all disputes concerning the STD plan are subject to the arbitration agreement into which it entered with Plaintiff. (Mem. in Supp. of BIPI's Mot. to Compel 8–13, ECF No. 16-1.) Plaintiff contends that the STD plan is governed by ERISA and is therefore subject to an exception built into the arbitration agreement for such disputes. (Opp'n to BIPI's Mot. to Compel 5–12, ECF No. 18.) Furthermore, the parties disagree over whether or not the determination of the arbitration agreement's scope is itself a matter to be resolved through arbitration. (*Compare* Mem. in Supp. of BIPI's Mot. to Compel 13, *with* Opp'n to BIPI's Mot. to Compel 3–5.) The Court is persuaded that under this arbitration agreement, it is the arbitrator's responsibility to determine whether a dispute between the parties is subject to the agreement, and the Court will therefore grant BIPI's motion.

Congress has stipulated that contractual agreements to resolve conflicts through arbitration are binding and enforceable on the parties to those contracts. Federal Arbitration Act, 9 U.S.C. § 2. In light of Congress' clear intent, federal courts generally apply a presumption in favor of honoring arbitration agreements. *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012). However, that presumption does not apply to the question of whether or not an arbitrator may decide the scope of the arbitration agreement. *Id.* It is generally up to trial courts to determine whether or not an issue is appropriate for arbitration. *Id.* Parties may nonetheless agree to have an arbitrator determine issues of arbitrability, but such an agreement must "clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate." *Id.*; *see also Carson v. Giant*

9

*Food, Inc.*, 175 F.3d 325, 330–31 (4th Cir. 1999) ("Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect.").

BIPI claims, and Plaintiff does not dispute, that Plaintiff entered into an arbitration agreement with BIPI. (*See* Opp'n to BIPI's Mot. to Compel 5.) In pertinent part, this agreement states "[e]xcept as otherwise expressly agreed upon, and except as otherwise provided by this Arbitration Agreement, any dispute as to the arbitrability of a particular claim made pursuant to this Arbitration Agreement shall be resolved in arbitration." (Arbitration Agreement § A.11.t, ECF No. 16-3.) This clause comports with the model language set by the *Carson* Court. *See* 175 F.3d at 330–31. Accordingly, whether the arbitration agreement covers the instant dispute is a question for the arbitrator to resolve. The Court will therefore grant BIPI's motion to compel arbitration on the issue of whether the arbitration agreement covers all facets of the present dispute.

It is worth noting that even if the scope and applicability of the arbitration agreement were a question for judicial determination, the Court would conclude that disputes concerning the STD plan fall within the agreement's scope. The arbitration agreement explicitly carves out an exception to its own applicability for claims arising under ERISA. (Arbitration Agreement § A.4.) Plaintiff's primary argument is that the STD plan is covered under ERISA and is therefore exempted from the arbitration agreement. (Opp'n to BIPI's Mot. to Compel 12.) However, the Court has already determined that the STD plan is not covered under ERISA. *See supra*. As to Plaintiff's alternative position for recovery under contract law (*see* Complaint 89), the arbitration agreement applies on its face to claims for breach of contract. (Arbitration

Agreement § A.2.) For these reasons, if it were appropriate for the Court to answer the question, it would find that Plaintiff's complaint concerning the STD program is appropriately governed by the arbitration agreement.

### 2. *Proper Disposition*

The question remains as to the proper treatment of the case in light of the Court's conclusion that an arbitrator will resolve questions of arbitrability. BIPI invites the Court to dismiss the case or, alternatively, to stay the litigation. (Mem. in Supp. of BIPI's Mot. to Compel 14.) Under the circumstances, a stay is appropriate.

When a court refers a case for arbitration subject to an arbitration agreement, it shall, on application of one of the parties, stay the trial until the arbitration is resolved. 9 U.S.C. § 3. Nonetheless, the court may dismiss the case when *all issues* presented in the lawsuit are subject to arbitration. *Choice Hotels Int'l*, 252 F.3d 707, 709–10 (4th Cir. 2011).

As discussed above, the Court holds that the threshold question—whether the arbitration agreement applies to all issues in the present dispute—must be resolved in arbitration. That being the case, the Court declines to rule whether all of Plaintiff's underlying claims against BIPI are subject to arbitration, and dismissal would therefore be premature at this time. Instead, the Court will stay the litigation pending arbitration.

## V.  Conclusion

Treating Aetna's motion as one to dismiss, the Court will grant it as to the contract cause of action in Count III and all of Count IV. Treating it as a motion for summary judgment, the Court will grant it as to the remainder of Count III. BIPI's motion to compel arbitration will be granted as to the question of whether any or all of the issues in dispute between it and Plaintiff

are subject to the arbitration agreement, and the case will be stayed pending the arbitrator's resolution of that question.

A separate order shall issue.

DATED this 13th day of October, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge